UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DEVANTE JENKINS and KAISHA CORDES, <br><br> Plaintiffs, <br><br> vs. <br><br> CEC ENTERTAINMENT INC., d/b/a Chuck E Cheese's Entertainment, Inc., a/k/a Chuck E Cheese's, John and Jane Does, Unknown Employees and Agents, <br><br> Defendants. | Civil Action No.: 2:17-cv-3025-BHH <br><br> **OPINION AND ORDER** |

This matter is before the Court on Defendants CEC Entertainment, Inc., John and Jane Does, and Unknown Employees and Agents' (collectively, "Defendants") motions for summary judgment. (ECF No. 19). For the reasons set forth in this Order, the motions for summary judgment are granted.

## **BACKGROUND**

Plaintiffs Devante Jenkins and Kyeshia Coardes[1] (collectively, "Plaintiffs") were attending their child's birthday party at one of Defendants' Chuck E. Cheese restaurants in Charleston, South Carolina, when a gunman shot and injured Plaintiff Jenkins. Plaintiffs assert that Defendants are liable under multiple theories of negligence for failing to prevent the shooting. Plaintiffs further assert dram shop liability, and Plaintiff Coardes claims loss of consortium. (ECF No. 1-1).

---

[1] It appears from the record that Ms. Coardes's name is spelled incorrectly in the caption. (ECF No. 19-1, ("Deposition of Kyeshia Coardes"), 6:16-17).

On November 7, 2017, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under 28 U.S.C. § 1332.[2] Defendants filed an answer the same day. (ECF No. 4). The case was thereafter reassigned to the undersigned on April 11, 2018. (ECF No. 9). Defendants subsequently filed two motions for summary judgment. In their first motion, Defendants ask the Court to enter judgment in their favor on the negligence claims on the basis that Plaintiffs can produce no evidence that the gunman's actions were foreseeable or preventable. (ECF No. 19). Defendants also ask that the Court enter judgment in their favor on the loss of consortium claim on the basis that Plaintiffs were not married. *Id.* Plaintiffs filed a response, (ECF No. 41), to which Defendants filed a reply, (ECF No. 45). Defendants filed a second motion for summary judgment on the dram shop liability claim. (ECF No. 48). Plaintiffs did not file a response to that motion. Because the Court exercises jurisdiction under 28 U.S.C. § 1332, it applies South Carolina law to the issues presented below. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938) (holding federal courts in diversity cases apply the law of the forum state).

## **LEGAL STANDARD**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

---

[2] Section 1441(b)(1) provides that the citizenship of defendants sued under fictitious names shall be disregarded in determining whether a civil action is removable on the basis of jurisdiction under § 1332(a).

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

The Parties do not dispute the following material facts. Plaintiffs were visiting the Chuck E. Cheese restaurant as Defendants' business invitees on October 11, 2014. In their presence at the restaurant, another business invitee, Thailando King, "began acting threateningly and aggressively toward other patrons." (ECF No. 1-1 at ¶ 6). Mr. King was a member of a party of young men who were arguing with another group of men. As the argument became heated, certain Chuck E. Cheese employees asked various individuals involved in the argument to leave the restaurant. Mr. King was one of the men asked to leave. Plaintiff Jenkins heard a member of the group say, "I'm going to get my [gun]," as the individual left the restaurant. (ECF No. 45-1 at 76:3-25). Plaintiff Coardes also heard someone say, "go get my burner." (ECF No. 41-1 at 25:8-

17). Plaintiff Jenkins attempted at that point to gather his family to leave the restaurant. (ECF No. 45-1 at 76:23-25). Plaintiff Jenkins explained during his deposition that while he tried to persuade his mother that their family needed to leave, he did not tell her or anyone else that he had heard one of the men reference bringing a gun into the restaurant:

> I didn't thought they was really going to go get it, so I just – I really kept it to myself. I just tell my mama we got to leave. My moma said, why. I said, we got to leave. I didn't want nobody to start panicking or nothing. . . . I didn't really figure they going to get no gun inside a place where a bunch of children at.

(*Id.* at 83:19-84:3). Plaintiff Jenkins did not call 911 and did not tell any of the Chuck E. Cheese employees what he had overheard. (ECF No. 45-1 at 95:15-23). Quantasha Brown, the restaurant's general manager who had been working that night, testified that no one informed her or any of her employees that one of the evicted patrons stated he was going to get his gun. (ECF No. 45-2 at 60:14-19; 82:1-7; 111:2-13).

As he was attempting to gather his family to leave, Plaintiff Jenkins saw one member of the evicted group walk back into the restaurant; Plaintiff Jenkins also watched the manager turn away another member of the group. (ECF No. 45-1 at 84:9-19). Plaintiff Jenkins testified that while the manager was preventing one individual from re-entering, another member of the group, later identified as Mr. King, "jumped across the wall waving with the gun." (*Id.* at 84:9-21). Plaintiff Jenkins testified that Mr. King pointed the gun at him and shot him in the leg. (*Id.* at 86:2-5). The Charleston County Police Department determined through its investigation that Mr. King gained entry by leaping over a wall that funnels all guests to a "kid check" station, which is located in front of the general entrance to the restaurant. (ECF No. 19-2). *See* (ECF No. 41-4 ("The defendant is observed by witnesses and video surveillance re-entering the business and hopping a partition to avoid detection by staff members")).

Ms. Brown testified that when she initially approached the men who were arguing she did

4

not perceive that the situation had "become threatening," and did not perceive a threat even after one of the groups had left. (ECF No. 45-2 at 59:3-24). She further testified that she did not think Mr. King had a gun when he returned to the restaurant; rather, she saw him raise his fists and thought "he was going to fight." (*Id.* at 71:16-22). She called 911 at that point, but Mr. King was already inside the restaurant and Ms. Brown did not believe the situation required her to lock the front door. (*Id.* at 71:16-72-2). Ms. Brown testified that she was trained to lock the front door only for power outages and in the event of an active shooter. (*Id.* at 68:6-12). She testified that she defines "active shooter" to mean "someone that is – that has shot a gun." (*Id.* at 51:15-24). While on the phone with 911, Ms. Brown heard Mr. King fire the gun and she reported the shots to the 911 operator. Only upon hearing the gunshots did she realize a patron had brought a gun into the restaurant. (*Id.* at 111:2-13).

**A.    Negligence**

Plaintiffs assert claims for Negligence, Premises Liability, Negligent Supervision, and Negligent Hiring/Retention. (ECF No. 1-1). Each of these claims is based on the theory that Defendants breached a duty owed to Plaintiffs, as business invitees, to protect them from harm while Plaintiffs were patronizing their restaurant. Any claim of negligence requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the breach was an actual or proximate cause of the plaintiff's injury; and (4) the breach resulted in injury to the plaintiff. *Madison v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). "If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Id.* (citing *Steinke v. S.C. Dept. of Labor, Licensing and Regulation*, 520 S.E.2d 142, 149 (1999)).

As to the third element, proximate cause requires both factual and legal causation.

*Bramlette v. Charter-Medical-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Id.* (citations omitted). Legal cause is proved by establishing foreseeability. *Id.* (explaining that a plaintiff "proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence") (citations omitted).

As discussed below, the Court finds that Plaintiffs have not produced evidence that Mr. King's criminal acts were foreseeable, and therefore concludes that summary judgment in Defendants' favor is appropriate as to all four theories of negligence.

### 1. Negligence and Premises Liability

No one disputes that Plaintiffs were Defendants' business invitees at the time of the shooting, or that a business owner owes a heightened duty of care to an invitee. *Sims v. Giles*, 541 S.E.2d 857, 861 (S.C. App. 2001). Indeed, a business owner has a duty to take reasonable action to protect its invitees against the foreseeable risk of physical harm. *Bass v. Gopal, Inc.*, 716 S.E.2d 910, 913 (S.C. 2011). However, this duty does not extend to "protection from criminal attacks from third parties unless the business owner knew or had reason to know the criminal attack would occur." *Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 832 (S.C. App. 1997). To help courts determine the scope of a business owner's duty to protect invitees from a third party's criminal acts, the Supreme Court of South Carolina endorsed an approach it refers to as the balancing test. *Id.* The balancing test "acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed." *Id.* at 915. To establish premises liability under the balancing test, Plaintiffs must first offer evidence that Mr. King's crime was foreseeable. On the production of that evidence, the Court must then determine whether the record includes evidence that Defendants' preventative actions were unreasonable

6

given the risk. *Id.* at 916.

Defendants argue that Plaintiffs cannot establish liability because they cannot prove that Mr. King's actions were either foreseeable or preventable. Plaintiffs contend "that it was foreseeable that a heated, aggressive argument between young, male adults inside the restaurant could escalate into a greater risk of physical harm to the patrons and employees of the Chuck E. Cheese restaurant." (ECF No. 41 at 1). Plaintiffs further contend that Defendants' failure to take preventative measures, such as locking the front door, was unreasonable in light of the foreseeable physical harm.

The Court begins with whether Plaintiffs have demonstrated foreseeability. Plaintiffs each testified that they heard one of the evicted individuals say he was going to get his gun.[3] Plaintiff Coardes testified that she simply walked in the other direction with her son when she heard the statement about the gun. Plaintiff Jenkins testified that while the statement motivated him to gather up his family, he did not believe the man intended to re-enter the restaurant with a gun. Even when Mr. King hopped the partition to evade restaurant staff, Plaintiff Jenkins thought Mr. King intended merely to fight. (ECF No. 45-1 at 84:20-25 (Q: "And what did you do once he jumped the wall?" A: "I stand right there. I thought they was coming back to fight.")). For her part, Ms. Brown did not hear any of the evicted men mention getting a gun, nor did any of her employees hear the statement. According to her testimony, she did not perceive that the situation had become particularly threatening. Like Plaintiff Jenkins, she anticipated, at most, that members of the two groups of men might engage in fisticuffs. (ECF No. 45-2 at 71:16-22 (Q: "Did you think that he

---

[3] It is unclear from the record whether Mr. King is the individual who stated he was going to get his gun. *See* (ECF No. 45-1 at 76:20-23, 83:11-16 (referring to "big dude" and "big guy" as the individual who said he was going to get his gun), 84:11-19 (referring to "big dude" as individual who tried to get back into the restaurant and "little dude" to individual who shot the gun).

7

could have a gun?" A: "No, sir." Q: "When you were calling 911?" A: "I would have never thought it." Q: "When you said they're about to fight?" A: "I was honestly thinking, sir, with his fists that he was going to fight."). Ms. Brown did not know anyone had brought a gun into the restaurant until she heard the gun shots. In sum, neither the victim nor the restaurant's manager foresaw that an evicted patron would return to the restaurant with a gun, let alone that the individual would fire shots. Accordingly, the Court finds that Plaintiffs have not produced evidence to support their theory that Defendants should have foreseen the shooting based on the men's heated verbal altercation.[4]

In light of the undisputed account of what transpired leading up to the shooting, Plaintiffs have not shown that Defendants acted unreasonably in the measures they took to protect their patrons. Ms. Brown sought to separate the quarreling groups and she evicted certain individuals from the restaurant. When one of the men from the evicted group tried to return, Ms. Brown "stop[ed] him from coming in." (ECF No. 45-2 at 68:1-3). Ms. Brown also instructed her staff to prevent the evicted men from re-entering the restaurant and she placed a call to 911 to summon emergency help. Plaintiffs have not produced evidence to show that the preventative measures Defendants took were unreasonable in light of the foreseeable risk of criminal activity by a third

---

[4] Both sides discuss the relevance of whether criminal acts had previously occurred at the restaurant. The *Bass* court instructed that "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." 786 S.E.2d at 915. While Plaintiffs reference Defendants' supplemental discovery responses to assert that "prior violent incidents" occurred "on Chuck E. Cheese's premises between October 11, 2004 and October 11, 2014," Plaintiffs do not specify if the incidents occurred at the same restaurant at issue herein, or elsewhere in the state, or in the country. (ECF No. 41 at 7). Nor do they attach to their response the supplemental discovery responses. In any event, Plaintiffs contend that "the foreseeability of the shooting is established by examining the events leading up to the shooting." *Id.* Those events are precisely what the Court examines in its foreseeability analysis.

party.[5]

Based on both a lack of foreseeability and a showing that Defendants' preventative measures were not unreasonable, Plaintiffs have not established that Defendants had a duty to protect Plaintiff Jenkins from Mr. King's criminal act.

**2. Negligent Hiring/Negligent Supervision**

In addition to Negligence and Premises Liability, Plaintiffs assert claims for Negligent Hiring/Retention and Negligent Supervision. "[W]here an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training . . . the employee." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). "Negligent hiring cases 'generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties.'" *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. 2011) (quoting *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (2005)). "The issue of an employer's knowledge concerns the employer's awareness that the employment of a specific individual created a risk of harm to the public." *Holcombe v. Helena Chemical Co.*, 238 F. Supp. 3d 767, 770 (D.S.C. Feb. 23, 2017) (quoting *Williams v. Preiss–Wal Pat III, LLC*, 17 F. Supp. 3d 528, 538 (D.S.C. 2014)). As for foreseeability, while it "is usually an issue of fact, 'the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." *Kase*, 707 S.E.2d at 459. The claim of negligent

---

[5] The Court notes a comparable case, *Easterling v. Burger King Corp.*, in which the court of appeals reviewed the expert testimony that "[t]he most significant thing [Burger King] could have done would have been to train [its] employees . . . to recognize suspicious situations . . . [and] call the police immediately." 786 S.E.2d 443, 450 (S.C. App. 2016). The court agreed that such security measures were economically feasible and adequate for the situation at hand, and found that the defendant had in fact implemented those measures.

supervision also hinges on foreseeability. "An employer owes a duty of care to a third party when the possible harm resulting to the third party by the employee could have been reasonably anticipated by the employer." *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 299 (S.C. 1996). *See Holcombe*, 238 F. Supp. 3d at 772 (recognizing that "although some South Carolina cases mention intentional harm as an element of negligent supervision claims, others do not," and explaining that the "unifying feature of the latter line of cases is that the employee caused the harm while acting within the scope of his employment").

Claims of negligent hiring and negligent supervision typically concern the tortious actions of a specific, individual employee, and the employer's knowledge or lack thereof that the employee would cause harm to the public. *See, e.g., Holcombe*, 238 F. Supp. 3d at 770 (granting summary judgment on negligent hiring claim where record contained "no evidence of any pre-hiring acts of wrongdoing by [the employee], let alone acts that might be similar to the incident [at issue therein]"). However, Plaintiffs appear to contend that Defendants are liable for negligent hiring, training, and/or supervision because Ms. Brown either (a) failed to follow the restaurant's safety protocol or (b) followed the protocol too closely.

As to the first theory, Plaintiffs assert that Defendants failed to properly train on two manuals, one governing risk management and safety and one governing active shooter events; and, specifically, that Ms. Brown "was untrained and unaware of the safety protocol established by CEC Entertainment, Inc.," such as organizing a safety committee and conducting safety meetings, and as a result she "failed to give employees safety training." (ECF No. 41 at 13). Plaintiffs assert that the "safety training material is important because it includes instruction on handling conflicts between patrons." (ECF No. 41 at 16 (citing ECF No. 41-8)). However, the undisputed evidence demonstrates that Ms. Brown acted in accordance with the risk management and safety manual's

10

instructions regarding conflict management, *see* (ECF No. 41-8 at 8), and, as stated above, Ms. Brown did not believe she was involved in an active shooter event. To the extent Ms. Brown failed to establish a safety committee and/or call regular meetings, Plaintiffs simply do not supply evidence to demonstrate how this failure resulted in the subject injury, i.e., that the failure was the proximate cause of the injury.

As to the second theory, Plaintiffs argue that Plaintiff Jenkins was injured "[a]s a result of Ms. Brown's strict adherence to CEC's grossly negligent door locking policy." (ECF No. 41 at 18). Plaintiffs appear to contend that Defendants are at fault for failing to implement a broader security policy regarding when employees should lock the front doors. However, as stated above, Plaintiffs have not demonstrated that the shooting was foreseeable. Accordingly, while Defendants certainly could have broadened their safety policy on when staff must lock the front doors, the evidence does not establish that they were required to do so.

The Court finds that Defendants are entitled to summary judgment on the negligence claims because the evidence, viewed in a light most favorable to Plaintiffs, does not support finding that Defendants owed a duty to protect them from Mr. King's criminal conduct.

**B.     Dram Shop Liability**

Plaintiffs assert a claim for dram shop liability on the basis that the restaurant sold alcohol to Mr. King shortly before he fired the shots. (ECF No. 1-1 at ¶¶ 36-39). Defendants argue in their second motion for summary judgment that Plaintiffs have provided no evidence that Mr. King was intoxicated at the time he shot Plaintiff Jenkins. Plaintiffs did not respond to the motion.

Section 61-4-580 of the South Carolina Annotated Code states that no holder of a permit authorizing the sale of beer or wine or any servant, agent, or employee of the permitee shall knowingly, upon the licensed premises covered by the holder's permit, sell beer or wine to an

11

intoxicated person. S.C. Code Ann. § 61-4-580(A)(2). The statute supplies a private cause of action for civil liability to a third party who is injured as a result of a violation of the statute. *Daley v. Ward*, 399 S.E.2d 13, 14 (S.C. App. 1990) (explaining the statute was "designed to promote public safety and that the purpose in prohibiting a vendor from selling beer to one who is already intoxicated is to prevent the person from becoming even more intoxicated so that he is not a greater risk when he leaves the bar") (citation omitted). *Accord Hartfield v. McDonald*, 671 S.E.2d 380, 382 (S.C. App. 2008). A patron is under the influence of alcohol, and therefore intoxicated, "when the ingestion of alcohol . . . results in the impairment of the person's faculties." *Jamison v. The Pantry, Inc.*, 392 S. E. 2d 474, 476 (S.C. App. 1990) (quoting *State v. Sheppard*, 150 S.E.2d 916 (1966)). Blood alcohol level may be sufficient proof of intoxication. *See id.*

Defendants assert that Plaintiffs have produced no evidence to demonstrate that the restaurant's staff served Mr. King alcohol or that Mr. King was intoxicated the night of the shooting. Defendants assert that the deadline for identifying experts passed without Plaintiffs disclosing a witness who could opine as to toxicology, and the record contains no lay testimony that Mr. King appeared intoxicated prior to the shooting. Rather, Plaintiff Jenkins testified that he did not see restaurant staff serve Mr. King alcohol that night and does not know if Mr. King was drinking. (ECF No. 48-2 at 90:16-20). Plaintiff Coardes similarly testified that she does not know if Mr. King was drinking at the restaurant. (ECF No. 48-1 at 39:14-22). Three other members of Plaintiffs' party testified that they did not observe Mr. King either drinking at the restaurant or acting in a way that suggested he was intoxicated. *See* (ECF No. 48-4 at 42:1-6; ECF No. 48-6 at 54:13-25; ECF No. 48-7 at 59:7-60:15). The Court notes that under South Carolina law, liability under the statute attaches where a person "knowingly" sells beer or wine to an intoxicated person without requirement as to whether the patron was visibly intoxicated. *Hartfield v. Getaway*

12

*Lounge & Grill, Inc.*, 697 S.E.2d 558, 564 (S.C. 2010) (declining to "adopt a new standard allowing for liability only where the intoxicated person is visibly intoxicated"). Nonetheless, the Court agrees that Plaintiffs have not produced any evidence demonstrating that Defendants served Mr. King knowing that he was intoxicated.

The Court finds that Plaintiffs have failed to carry their burden of demonstrating a material issue of fact exists as to this claim, and that Defendants are entitled to judgment in their favor as a matter of law.

**C.** **Loss of Consortium**

Finally, Plaintiff Coardes asserts a claim for loss of consortium. (ECF No. 1-1 at ¶¶ 42-43). Defendants argue in their first motion for summary judgment that the claim is not cognizable because Plaintiffs were not married at the time of the shooting. (ECF No. 19 at 10). On reply, Defendants concede "that a genuine issue of material fact exists to Plaintiffs marital status at the time of the incident [sic] . . . ." (ECF No. 45 at 18). Defendants argue nonetheless that the claim fails because it is "completely dependent" on the negligence claims and the dram shop liability claim. *Id.*

Under South Carolina law, "[a]ny person may maintain an action for damages arising from an intentional or tortious violation of the right to the companionship, aid, society and services of his or her spouse." S.C. Code Ann. § 15-75-20. While the claim for loss of consortium is not a derivative cause of action in South Carolina, "there must be some intentional or tortious conduct for a loss of consortium claim to stand." *Williams v. Lancaster Cty. Sch. Dist.,* 631 S.E.2d 286, 294 (S.C. App. 2006). The Court agrees with Defendants that because the record does not establish a tortious violation there is no basis on which Plaintiff Coardes could prevail on a claim for loss of consortium.

13

## **CONCLUSION**

After careful consideration of the Parties' briefs, the associated record, and the applicable law, the Court hereby grants Defendants' motions for summary judgment, (ECF Nos. 19, 48).

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
Bruce Howe Hendricks
United States District Judge

September 30, 2019
Charleston, South Carolina